UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WENDY RENEÉ CARLTON                                      CIVIL ACTION

VERSUS                                                   NO. 26-156

ALPHABET INC., *et al.*                                  SECTION M (2)

## ORDER & REASONS

Before the Court are motions to dismiss filed by defendants the Internet Corporation for Assigned Names and Numbers ("ICANN") and Microsoft Corporation ("Microsoft").[1]  Plaintiff Wendy Reneé Carlton, who is proceeding *pro se*, responds in opposition to both motions,[2] and Microsoft and ICANN reply in further support of their motions.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court grants both motions because ICANN is not subject to personal jurisdiction in Louisiana, the Court lacks subject-matter jurisdiction over Carlton's claims against Microsoft, and regardless, the complaint fails to state any viable claims against Microsoft or ICANN.

## I.   BACKGROUND

This case concerns purported claims of constitutional violations brought against private companies.  Carlton filed this suit against ICANN, Microsoft, Alphabet Inc., and Walmart Inc. (collectively, "Defendants"), alleging that these private companies violated the Fourth and Fourteenth Amendments to the Constitution of the United States through surveillance and virtual monitoring that intruded "into her person, data, and bodily autonomy in contexts where she

---

[1] R. Docs. 9; 14.
[2] R. Docs. 16; 24.
[3] R. Docs. 23; 28.

reasonably expected privacy" and affected "her liberty, autonomy, and legal interests, without [her] consent, notice of authority, or lawful procedural safeguards."[4]  Carlton asserts, without alleging any supporting facts, that the Defendants "may have acted under color of state or federal law, or in joint participation with and/or at the direction of governmental actors, through undisclosed arrangements, cooperative frameworks, data-sharing practices, delegated functions, or integrated processes."[5]  Carlton seeks a declaratory judgment, an injunction, and damages.[6]

Carlton's complaint does not allege any facts specific to any defendant.[7]  Instead, Carlton alleges generally that, "over an extended period and continu[ing to the date of filing]," all Defendants, through "both digital and physical environments, including online platforms, data systems, and physical locations," engaged in "non-consensual surveillance, monitoring, and data-driven interference affecting her person, privacy, and autonomy," which has caused her to systemically experience "persistent and patterned interference affecting her cognitive processes, bodily integrity, and personal autonomy," such as "involuntary physiological responses and interference with bodily functions."[8]  She further alleges that Defendants exploited and misused "her personal data and behavioral patterns, restricting her liberty interests and decision-making autonomy without notice, consent, or lawful authorization."[9]  According to Carlton, Defendants used her status as a consumer of their products or services to "collect[], process[], analyze[], and/or

---

[4] R. Doc. 6 at 5-7 (quotes at 5 and 6 (emphasis omitted)).  Record Document 6 is Carlton's first amended complaint.  Because Carlton did not incorporate the original complaint by reference into the amended complaint, the amended complaint is now the operative complaint.  *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

[5] R. Doc. 6 at 7-9 (quote at 7 (emphasis omitted)).

[6] *Id.* at 10-14.

[7] *See id.* at 1-14.

[8] *Id.* at 4-5.

[9] *Id.* at 4.

derive[] her biometric, anatomical, and/or cognitive data through technological, commercial, and/or institutional frameworks without informed consent or procedural safeguards."[10]

## II.     LAW & ANALYSIS

### A. Jurisdictional Challenges

Microsoft moves to dismiss for lack of standing.[11]  Because standing is a component of subject-matter jurisdiction, it is properly raised by a motion to dismiss brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *Mixon v. Toyota Motor Corp.*, 2026 WL 657741, at *2 (E.D. Tex. Mar. 9, 2026).  And ICANN moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[12]  Both Microsoft and ICANN also seek dismissal for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will address the jurisdictional issues before considering whether a claim was stated by the complaint, although there is no requirement that jurisdictional issues be considered in a particular order."  5B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1351, at 244-46 (4th ed. 2024).  Therefore, the Court will first consider the jurisdictional challenges.

### 1. Dismissal Under Rule 12(b)(1) – Microsoft

Rule 12(b)(1) permits a party to challenge a court's subject-matter jurisdiction.  "[A] claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory authority or constitutional power to adjudicate the claim."  *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (quotation omitted).  The party asserting jurisdiction bears the burden of

---

[10] *Id.* at 4-5 (quote at 4).
[11] R. Doc. 14-1 at 4-5.
[12] R. Doc. 9.

proving that subject-matter jurisdiction exists. *Id.* "[S]ubject matter jurisdiction may be found on any of the following bases: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Winder v. United States*, 2025 WL 3543604, at *1 (5th Cir. Dec. 10, 2025) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). "A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of h[er] claims entitling h[er] to relief." *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 239 (5th Cir. 2018).

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). "The case-or-controversy doctrines state fundamental limits on federal judicial power in our system of government." *Id.* And, "[t]he Art[icle] III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important of these doctrines." *Id.* Standing determines "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.* at 750-51 (quotation omitted). "[S]tanding requires: (1) that the plaintiff have suffered an 'injury in fact' – an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of – the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 167 (1997); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

4

As Microsoft demonstrates, Carlton has not established that she has standing to pursue her claims against Microsoft. Carlton has not stated any facts showing that she suffered an actual, concrete, and particularized injury in fact that is traceable to any specific act of Microsoft. Carlton asserts, without identifying anything specific in the complaint, that she has alleged a concrete injury and "describe[d] the nature of [her] injuries and the technological environment in which those injuries occurred."[13] She further argues that she alleged concrete injuries – namely, "interference affecting her person, privacy, and autonomy" – sufficient to establish standing.[14] Contrary to Carlton's assertions, though, there are no facts stated in her conclusory, generalized, and rambling complaint showing that Microsoft took any particular action that violated her Fourth or Fourteenth Amendment rights. Further, Carlton has not alleged any specific action on the part of Microsoft to which her supposed injuries are traceable – and repeatedly concedes that she cannot do so.[15] Thus, Carlton's claims against Microsoft must be dismissed without prejudice under Rule 12(b)(1) for lack of standing.

### 2. Dismissal Under Rule 12(b)(2) – ICANN

Rule 12(b)(2) confers a right to dismissal of claims against a defendant where personal jurisdiction is lacking. Personal jurisdiction is "an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quotation and alteration omitted). When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden to show that personal jurisdiction exists. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The allegations of the complaint, except as

---

[13] R. Docs. 16 at 3; 23 at 4-5.
[14] R. Doc. 16 at 4.
[15] R. Doc. 6 *passim* (referencing various matters central to her claims that are nonetheless "unknown to her").

controverted by opposing affidavits, must be taken as true, and all conflicts must be resolved in favor of the plaintiff. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over the defendant, and (2) the exercise of personal jurisdiction comports with due process under the United States Constitution. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). Because Louisiana's long-arm statute extends to the limits of due process, the two inquiries collapse into the single inquiry whether the exercise of personal jurisdiction comports with due process. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).

An individual's liberty interest is protected by federal due process through the requirement "that individuals have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (alteration omitted) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)). For purposes of personal jurisdiction, the due-process inquiry looks at whether the defendant has purposefully availed itself of the benefits and protections of the forum state through "minimum contacts" with the forum, and whether the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The inquiry thus focuses "on the nature and extent of the defendant's relationship to the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quotation omitted).

"There are two kinds of personal jurisdiction: 'general or all-purpose jurisdiction' and 'specific or case-linked jurisdiction.'" *Daughtry v. Silver Fern Chem., Inc.*, 136 F.4th 210, 215 (5th Cir. 2025) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)); *see also Goodyear*

6

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  For a court to exercise general jurisdiction, the defendant's contacts with the forum must be "so continuous and systematic" as to render the defendant "at home" in the forum state.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citing *Goodyear*, 564 U.S. at 919).  "'For an individual, the paradigm forum for the exercise of general jurisdiction is an individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'"  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 924).

Pursuant to these principles, ICANN is not subject to general jurisdiction in Louisiana. ICANN is a nonprofit public benefit corporation organized under the laws of California that maintains its principal place of business in California.[16]  ICANN offers proof that it has no presence in Louisiana.[17]  And Carlton has presented no contrary evidence showing that ICANN has "continuous and systematic" contacts with Louisiana as would subject it to general jurisdiction in the state.  The Court turns then to the question whether ICANN is subject to specific jurisdiction in Louisiana.

Specific jurisdiction exists when a defendant's contacts with the forum state arise from, or are directly related to, the plaintiff's cause of action.  *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021).  In analyzing specific jurisdiction, courts employ a three-prong test to determine (1) whether the defendant purposefully directed its activities at the forum and availed itself of the privilege of doing business there, (2) whether the claim arises out of or results from the defendant's forum-related contacts, and (3) whether the exercise of personal jurisdiction is reasonable and fair.  *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895-96 (5th Cir. 2022).  After the plaintiff establishes the first two factors, which correspond with the "minimum contacts" prong of

---

[16] R. Docs. 9-1 at 2, 6; 9-2 at 1.
[17] R. Docs. 9-1 at 2, 6; 9-2 at 2.

*International Shoe*, the burden shifts to the defendant to demonstrate that an exercise of personal jurisdiction would be unfair or unreasonable. *Burger King*, 471 U.S. at 477 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). In determining reasonableness, a court considers "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987), as well as "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292. Specific jurisdiction is a claim-specific inquiry, and a court must analyze each defendant's forum-related contacts on a claim-by-claim basis. *Savoie v. Pritchard*, 122 F.4th 185, 194 (5th Cir. 2024); *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495-96, 500 (5th Cir. 2022) (separately analyzing personal jurisdiction for intentional tort claims and breach-of-contract claims); *see also Ecigrusa LLC v. Silver State Trading LLC*, 2022 WL 1321573, at *4 (N.D. Tex. May 3, 2022).

ICANN submits that it has not purposefully directed its activities toward Louisiana and has not availed itself of the privilege of engaging in commercial business in that forum.[18] Indeed, ICANN, a nonprofit entity, does not conduct any commercial business but instead "oversees the technical coordination of the Internet's unique identifier systems," including converting numeric internet protocol (IP) addresses into domain names.[19] In opposition, Carlton argues that "ICANN's role in the domain name system … results in repeated, structured transactions affecting [her] in Louisiana, establishing sufficient minimum contacts to support personal jurisdiction" and that this is enough at the pleadings stage.[20] She also argues that ICANN had a systematic presence in

---

[18] R. Doc. 9-1 at 2.
[19] *Id.*
[20] R. Doc. 24 at 2.

8

Louisiana that affected her as demonstrated by her payment of ICANN fees in *de minimus* amounts (less than about $2.00 over three years) when she registered or renewed domain names.[21]  Carlton asserts that some of her domain names are dormant because of the surveillance about which she complains in this suit.[22]  ICANN replies, reurging that Carton's complaint and opposition do not demonstrate that ICANN had meaningful contacts with Louisiana.[23]  It further explains that the "ICANN fees" are not evidence of ICANN's contacts with Carlton in Louisiana because those fees were not charged by ICANN to Carlton, but rather charged by ICANN to the domain name registrars, who may or may not have passed those fees on to Carlton.[24]  ICANN also contends that Carlton's claims do not arise out of the fees, and thus they cannot serve as a basis for specific jurisdiction in any event.[25]

Regardless of Carlton's assertions about ICANN's contacts with Louisiana, she has presented no evidence showing that ICANN directed its activities toward Louisiana as would subject it to specific jurisdiction in the forum.  In particular, Carlton has not shown how the claims she purports to make in this lawsuit arise out of any forum-related contacts on ICANN's part.  She alleges absolutely no facts specific to ICANN in the complaint that connect its collection of fees for domain names with the constitutional claims she alleges.  In sum, ICANN cannot be subject to specific jurisdiction in Louisiana for the claims supposedly made in this case.  Because this Court lacks both general and specific jurisdiction over ICANN, Carlton's claims against it must be dismissed without prejudice under Rule 12(b)(2).[26]

---

[21] *Id.* at 4-5.

[22] *Id.* at 5.

[23] R. Doc. 28 at 2.

[24] *Id.* at 3-4.

[25] *Id.* at 4.

[26] Carlton requests jurisdictional discovery as to ICANN.  *Id.* at 6-7.  ICANN opposes this request, arguing that it is unwarranted because Carlton fails to allege any facts that suggest ICANN has minimum contacts in Louisiana and her opposition does not rebut ICANN's evidence that it lacks such contacts.  R. Doc. 28 at 6.  Carlton's request for jurisdictional discovery is denied because she has failed to state a viable claim against ICANN.  *Corr Wireless*

**B. Dismissal Under Rule 12(b)(6) – Microsoft & ICANN**

Even if this Court had subject-matter jurisdiction over Carlton's claims against Microsoft and personal judication over ICANN, her claims are subject to dismissal on other grounds. Both Microsoft and ICANN move to dismiss the amended complaint under Rule 12(b)(6), arguing that Carlton's complaint fails to state a viable claim for relief.[27] They both point out that Carlton's complaint does not satisfy the fact-pleading standard of Rule 8 of the Federal Rules of Civil Procedure because Carlton does not plead any facts whatsoever as to either Microsoft or ICANN.[28] Microsoft and ICANN also argue that, as private companies, they cannot be held liable for constitutional violations.[29]

Carlton, in opposition, argues that she has complied with Rule 8 and pleaded enough facts to show that "Defendants collectively operate within technological systems that process, monitor, and analyze personal data within interconnected digital environments."[30] She asserts that this is enough to state a claim against Microsoft and put it on notice of her claims because it "is a major developer and operator of operating systems, cloud computing platforms, and technological infrastructure that form part of the broader digital ecosystem described in the [c]omplaint."[31] Carlton also contends that she has pleaded enough facts against ICANN to state a claim for relief because the complaint "describes the nature of [her] injuries and the technological environment in which those injuries occurred, providing Defendants with fair notice of the claims asserted."[32] She

---

*Commc'ns, L.L.C. v. AT & T, Inc.*, 907 F. Supp. 2d 793, 802 (N.D. Miss. 2012) (denying request for jurisdictional discovery because, "even if it were proper to exercise personal jurisdiction over [the defendant], Plaintiffs would not be able to overcome the Rule 12(b)(6) findings").

[27] R. Docs. 9; 14.

[28] R. Docs. 9-1 at 7-8; 14-1 at 5-6.

[29] R. Docs. 9-1 at 8-9; 14-1 at 6-7.

[30] R. Doc. 16 at 5.

[31] *Id.* at 5-6.

[32] R. Doc. 24 at 3.

10

further argues that her amended complaint states enough facts about ICANN's involvement in domain name assignments to state a claim for relief.[33]

In reply, Microsoft argues that Carlton's opposition does not show how it can be held liable for constitutional violations as she fails to cite any of the relevant tests for invoking the state-action doctrine against a private corporation, nor does she allege a single fact showing that Microsoft was a government actor.[34]  Microsoft further argues that Carlton has not pointed to any actionable conduct by Microsoft because she does not allege any interactions between her and the company, nor does she allege facts specific to Microsoft.[35]  Instead, the complaint lumps all the companies together, which, says Microsoft, does not satisfy Rule 8.[36]  ICANN's reply echoes these sentiments.[37]

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

---

[33] *Id.* at 6.
[34] R. Doc. 23 at 2-3.
[35] *Id.* at 4-5
[36] *Id.* at 5-6.
[37] R. Doc. 28 at 5-6.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th

12

Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

As noted, Carlton is proceeding *pro se*. A court liberally construes a *pro se* party's filings and those filings are held "to less stringent standards than formal pleadings drafted by lawyers." *United States v. Davis*, 629 F. App'x 613, 618 (5th Cir. 2015) (quotation omitted).  Nevertheless, a *pro se* plaintiff is still claiming the benefit of the courts and must adhere to its procedures and the substantive law.  *See Thorn v. McGary*, 684 F. App'x 430, 433 (5th Cir. 2017) (observing that a *pro se* plaintiff is not "exempt ... from compliance with the relevant rules of procedural and substantive law" (quotation omitted)).  "A court will squint at *pro se* filings to discern what may be there – but it will not see things that are not there."  *Brown v. Brown*, 2025 WL 1811326, at *3 (N.D. Tex. July 1, 2025) (citing  *Smith v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 735 F. App'x 848, 851 (5th Cir. 2018) ("[T]here are limits on how far we will go to assist *pro se* plaintiffs.")).

Even employing a liberal reading, Carlton's complaint fails to satisfy Rule 8 because it alleges absolutely no factual allegations to support claims for violations of the Fourth and Fourteenth Amendments.  First, there are no specific factual allegations concerning what any defendant supposedly did, as required by Rule 8.  Carlton's failure to satisfy Rule 8 thus would be sufficient alternative reason to dismiss her claims under Rule 12(b)(6), even if the Court had jurisdiction in this matter.

Second, Carlton's complaint would also be vulnerable to dismissal because she fails to state viable constitutional claims against ICANN or Microsoft.  Claims for constitutional violations are brought under 42 U.S.C. § 1983.  *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999).  Section 1983 provides a remedy against "every person," who under color of state law,

13

deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). To pursue a claim under § 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Sw. Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 260 (5th Cir. 2008); *see also West v. Atkins*, 487 U.S. 42, 48 (1988). Because § 1983 requires that the alleged tortfeasor be "acting under the color of state law," the conduct of private parties is generally excluded from the statute's purview. *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). However, a private actor's conduct can be fairly attributable to a state if: (1) the "private entity performs a function which is exclusively reserved to the [s]tate" – the public function test; (2) the state "exerts coercive power over the private entity or provides significant encouragement" – the state compulsion test; (3) the state "has inserted itself into a position of interdependence with the private actor, such that it was a joint participant in the enterprise" – the nexus or state action test; or (4) the private entity is a "willful participant[] in joint action with the [s]tate or its agents" – the joint action test. *Id.* at 549-50 (quotations, alteration, and internal citations omitted). "Deciding whether a deprivation of a protected right is fairly attributable to the [s]tate 'begins by identifying the specific conduct of which the plaintiff complains.'" *Id.* at 550 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)). Here, the specific conduct of ICANN and Microsoft is not alleged in the complaint. Thus, there are no facts explaining how either company was acting under the color of state law as could subject them to liability under § 1983 for constitutional violations. And, again, as private parties, they cannot be held liable under § 1983. In sum, Carlton fails to state viable claims for relief against ICANN and Microsoft, and even if subject-matter and personal jurisdiction were present, the Court would dismiss her claims with prejudice under Rule 12(b)(6).

14

### C. Leave to Amend

Carlton seeks leave to file a second amended complaint,[38] which Microsoft and ICANN oppose.[39]  A *pro se* litigant should generally be offered an opportunity to amend the complaint before dismissal unless she has pleaded her "best case."  *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009).  The Court has found that it lacks subject-matter jurisdiction over Carlton's claims against Microsoft and personal jurisdiction over her claims against ICANN.  The Court has also found that Carlton failed to state viable claims against either company.  Carlton has already filed one amended complaint and has not shown that there are any material facts that she would include in an additional amended complaint that would cure the jurisdictional and pleading defects identified here.  This is especially true considering that Carlton has not shown how her claims are related to ICANN's involvement in issuing domain names nor has she told the Court what facts she would allege to establish standing for any viable claim against Microsoft.  After all, as private entities, Microsoft and ICANN cannot be held liable for constitutional violations unless their conduct can be shown to have been fairly attributable to the government.  Carlton has not alleged any facts to support such a notion, nor has she indicated that any exist.  Thus, the Court finds that she has pleaded her best case at this point and further amendment would be futile.

### III.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that ICANN's motion to dismiss (R. Docs. 9) is GRANTED and Carlton's claims against it are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Microsoft's motion to dismiss (R. Docs. 14) is GRANTED and Carlton's claims against it are DISMISSED WITHOUT PREJUDICE.

---

[38] R. Doc. 16 at 3, 6.
[39] R. Docs. 23 at 7-8; 28 at 7.

15

New Orleans, Louisiana, this 2nd day of April, 2026.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE